# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00868-CR

**Clifton Eugene Holloway Sheppard, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT
### NO. 7028, THE HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Clifton Eugene Holloway Sheppard of the offense of possession of a controlled substance, cocaine, in an amount of four grams or more but less than 200 grams, within 1,000 feet of a school.  *See* Tex. Health & Safety Code Ann. §§ 481.115(a), (d) (West 2010), 481.134(c)(1) (West Supp. 2012).  The jury assessed his punishment, enhanced by a prior felony conviction, at confinement for 25 years in the Institutional Division of the Texas Department of Criminal Justice.  *See* Tex. Penal Code Ann. § 12.42(b) (West Supp. 2012); Tex. Health & Safety Code Ann. § 481.134(c)(1).  On appeal, Sheppard challenges the sufficiency of the evidence and complains about the exclusion of evidence.  We affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that on the evening of March 5, 2009, Giddings Police Officer Derek Griffin initiated a traffic stop of a pickup truck displaying an expired inspection

sticker. The truck pulled over, stopping within 1,000 feet of a Lutheran church and private church school. After parking his patrol car directly behind the truck, Officer Griffin made contact with the driver, Sheppard, through the driver's side window and asked for his identification. Sheppard provided the officer with a Texas driver's license that had expired in 2005. Officer Griffin then ran a driver's license history and warrant check through dispatch. The computer check showed that Sheppard's driver's license was suspended and revealed an open arrest warrant for Sheppard for the failure to pay child support. Intending to place Sheppard under arrest, Officer Griffin asked Sheppard to step out of his truck, instructing him to not have anything in his hands when he exited the vehicle. Sheppard exited his truck with a wallet in one hand and a cell phone in the other hand.

At Officer Griffin's direction, Sheppard moved to the back of the truck in front of the patrol vehicle. The officer repeatedly asked Sheppard to empty his hands so he could place him in handcuffs. However, Sheppard refused to comply with this request, but instead questioned why Griffin was asking him to do this. To encourage compliance with his request, Officer Griffin moved his hand close to his taser and once again asked Sheppard to empty his hands and place them behind his back. At this point, Sheppard ran from behind the pickup along its passenger side, across the front of the pickup, toward the driver's side, and across the street. Sheppard's flight path took him past an 18-wheeler commercial vehicle that was parked a short distance in front of the pickup. Officer Griffin immediately pursued Sheppard on foot.

Officer Griffin's pursuit of Sheppard continued for a distance of about 500 to 600 feet from the traffic stop location. At one point during the chase, Sheppard abruptly turned to change direction and bumped into Officer Griffin. Sheppard then surrendered, raising his hands in the air.

2

He then laid face down on the ground with his hands beneath his chest. Concerned with his safety, Officer Griffin instructed Sheppard to move his hands from beneath his chest and place them behind his back to be handcuffed. Sheppard's repeated failure to comply with that instruction prompted the officer to apply his taser against Sheppard's back twice.

About this time, Officer Adam Sheppard arrived to assist Griffin. The two officers succeeded in handcuffing Sheppard and returning him to the original traffic stop location. Sheppard was placed in Officer Griffin's patrol vehicle, and the officers commenced an inventory search of the pickup truck Sheppard had been driving. During the inventory search, Officer Sheppard circled to the front of the truck to record the license plate number. When he looked down at the front license plate, the officer immediately noticed a small plastic baggie on the ground in front of the truck only a few feet from the passenger side front tire. Upon inspection, he discovered it contained multiple rocks of an off-colored white substance, which Officer Sheppard immediately recognized to be crack cocaine. Officer Sheppard handed this baggie and its contents to Officer Griffin who also recognized the contents as crack cocaine. Subsequent lab testing revealed that the baggie contained 4.57 grams of cocaine.

The jury found Sheppard guilty of possession of four grams or more but less than 200 grams of cocaine within 1,000 feet of a school.[1] Sheppard pled true to the enhancement

---

[1] The indictment charged Sheppard with possession of a controlled substance, cocaine, in an amount of more than four grams but less than 200 grams of cocaine, with intent to deliver the controlled substance. The indictment further alleged that Sheppard committed the offense within 1,000 feet of a school. The jury found Sheppard guilty of the lesser-included offense of possession of four grams or more but less than 200 grams of cocaine within 1,000 feet of a school, without intent to deliver the controlled substance.

3

paragraph of the indictment alleging that he had been previously convicted of the felony offense of delivery of a controlled substance, cocaine, in an amount of four grams or more but less than 200 grams. The jury returned a verdict assessing Sheppard's punishment at confinement for 25 years in prison. This appeal followed.

## Sufficiency of the Evidence

In his first point of error, Sheppard complains that the evidence is insufficient to support his conviction for possession of a controlled substance. He argues that the evidence fails to link him to the cocaine found on the ground in front of his truck.

### Standard of Review

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

In determining the sufficiency of the evidence, we must consider all the evidence in the record that the jury was permitted to consider, whether direct or circumstantial, properly

4

or improperly admitted, or submitted by the prosecution or the defense. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004); *Allen v. State*, 249 S.W.3d 680, 688–89 (Tex. App.—Austin 2008, no pet.). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). A sufficiency review requires us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. The jury, as exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). Thus, when faced with a record of historical facts that supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). We consider only whether the jury reached a rational decision. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Every fact does not need to point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* So long as "the

5

verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable." *Laster*, 275 S.W.3d at 523. As with any question of circumstantial evidence and inference, "'the jurors are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence.'" *Boston v. State*, 373 S.W.3d 832, 837 (Tex. App.—Austin 2012, pet. filed) (quoting *Obigbo v. State*, 6 S.W.3d 299, 306 (Tex. App.—Dallas 1999, no pet.)).

*Possession of a Controlled Substance*

To support a conviction for possession of a controlled substance, the State must prove, first, that the defendant exercised care, custody, control, or management over the substance and, second, that he knew the matter possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see* Tex. Health & Safety Code Ann. § 481.115(a). When an accused is not in exclusive possession and control of the place where the contraband is found, it cannot be concluded or presumed that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances connecting or linking him to the contraband. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); *Allen*, 249 S.W.3d at 690. These links may be established by circumstantial evidence. *Poindexter*, 153 S.W.3d at 405–06; *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). Whether direct or circumstantial, the evidence must establish, to the requisite level of confidence, that the accused's connection with the contraband was more than just fortuitous. *Poindexter*, 153 S.W.3d at 406; *Brown*, 911 S.W.2d at 747; *Allen*,

6

249 S.W.3d at 691. Mere presence at the location where drugs are found is insufficient, by itself, to establish care, custody, or control of those drugs. *Evans*, 202 S.W.3d at 162. However, presence and proximity when combined with other evidence, direct or circumstantial, may be sufficient to establish a knowing possession of contraband. *Id.*

Courts have identified relevant factors that may link an accused to contraband, either singly or in combination, to establish a person's possession of contraband.[2] *See Evans*, 202 S.W.3d at 162 n.12 (citing *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). Treating these factors as a required checklist, Sheppard argues the evidence in this case is insufficient because more "affirmative links" are absent from this case than are present. However, these relevant factors are simply some factors that may circumstantially establish the legal sufficiency of the evidence to prove a knowing possession; they are not a litmus test. *Id.* Not all, or even a certain number, of these factors must be proved. It is "not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial." *Id.* Moreover, the absence of some of the factors is not evidence of innocence that must be weighed against the

---

[2] These factors include: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *See Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (citing *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

factors that are present. *Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976). Whether sufficient facts and circumstances exist to link or connect a defendant to illegal contraband is determined on a case-by-case basis. *See Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd); *see also Allen*, 249 S.W.3d at 692 n.13 (explaining that affirmative-link doctrine "is a judicially devised standard to aid appellate courts in determining the legal sufficiency of the evidence in knowing possession of contraband cases" and is not a "litmus test"). There is no set formula of facts necessary to support an inference of knowing possession. The issue is whether there was evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance. *Evans*, 202 S.W.3d at 166–67 (Womack, J., concurring).

In this case, Sheppard exited his truck with objects in both of his hands, contrary to the officer's instructions. Then, after repeated requests, he refused to put the items down. Instead, when Officer Griffin gestured toward his taser to encourage compliance, Sheppard fled on foot. His path of flight took him around his truck, up the passenger side, across the front of his truck—the exact location where the cocaine was later discovered, and across the street. When he ultimately surrendered, he did so by holding up his hands. After Sheppard resisted repeated orders to place his hands behind his back, he was tased, and the officers were eventually able to retrieve his hands and secure him in handcuffs. The record reflects that $600 was removed from his wallet. The record does not indicate where Sheppard's wallet was recovered or whether Sheppard's phone was recovered, though it suggests that these items were not in his hands when he surrendered.

8

Sheppard's response of fleeing from Officer Griffin gives rise to multiple, reasonably equal, plausible inferences: that he did not want to be tased, that he did not want to be arrested—on the outstanding arrest warrant or for driving with a suspended driver's license, or that he wanted the opportunity to dispose of drugs he had concealed in his hand. Although the parties may disagree about the logical inferences that flow from undisputed facts, "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Evans*, 202 S.W.3d at 164 (citing *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985)). In such a situation, it is clearly the jury that makes the choice of which inference to accept. *Id.* It is the jury, not the reviewing court, that chooses between alternate reasonable inferences to be drawn from the evidence. *Id.* at 165. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight given to their testimony in determining whether the evidence shows a sufficient link between the defendant and the contraband. *Poindexter*, 153 S.W.3d at 406; *see Hall v. State*, 86 S.W.3d 235, 241 (Tex. App.—Austin 2002, pet. ref'd) (trier of fact determines whether factors presented at trial combine to form link between accused and contraband).

Viewing all the evidence in the light most favorable to the State, the logical force of the combined pieces of circumstantial evidence in this case, together with reasonable inferences from them, could lead a rational jury to determine that Sheppard exercised care, custody, control, or management of the cocaine found on the ground in front of his truck and that he knew the cocaine was contraband. *See Evans*, 202 S.W.3d at 162. Accordingly, the evidence was sufficient to support Sheppard's conviction for possession of a controlled substance. *See Jackson*, 443 U.S. at 318–19; *see also* Hooper, 214 S.W.3d at 13. We overrule his first point of error.

9

**Exclusion of Evidence**

Sheppard's remaining two points of error relate to the trial court's exclusion of evidence. In his second point of error, Sheppard contends the trial court erred by refusing to allow him to offer evidence that his relative died while in custody. In his third point of error, Sheppard asserts that the trial court erred in excluding evidence of the arresting officer's prior drug arrest.

*Standard of Review*

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court abuses its discretion only if its decision "lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), *cert. denied*, 131 S.Ct. 2966 (2011); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

*Death of Relative in Custody*

At trial, Sheppard attempted to offer evidence about the death of his relative in 2002 while in the county jail in the custody of the Giddings Police Department. Sheppard wanted to present evidence that he became "emotionally distraught" when informed about his relative's death through the testimony of the officer who told him about the death. He argued that this evidence was relevant to demonstrate his fear of law enforcement and explain his flight from Officer Griffin. The

State objected, arguing the evidence was not relevant and that it was more prejudicial than probative. On appeal, Sheppard argues that the evidence of his relative's death would have provided the jury with a reason, other than his guilt, for his flight from Officer Griffin. Thus, he maintains, the trial court erred in excluding this evidence.

To be relevant, evidence must be material and probative. *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001); *see* Tex. R. Evid. 401. Evidence is material if it is "shown to be addressed to the proof of a material proposition, i.e., any fact that is of consequence to the determination of the action." *Miller*, 36 S.W.3d at 507 (quoting Steven Goode, et al., *Texas Practice Guide to the Texas Rules of Evidence: Civil and Criminal* § 401.1 (2d ed. 1993 & Supp. 1995)). Evidence is probative if it tends to make the existence of the fact more or less probable than it would be without the evidence. *Id.* Thus, the proffered evidence is relevant if it has been shown to be material to a fact in issue and if it makes that fact more probable than it would be without the evidence. *Id.*

"[E]vidence merely tending to affect the probability of the truth or falsity of a fact in issue is logically relevant." *Mendiola v. State*, 21 S.W.3d 282, 284 (Tex. Crim. App. 2000) (quoting *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990)). The evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence. *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004). In determining whether evidence is relevant, courts should examine the purpose for which the evidence is being introduced. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). "It is critical that there is a direct or logical connection between the actual

evidence and the proposition sought to be proved." *Id.* Evidence that is not relevant is not admissible. Tex. R. Evid. 402; *see also Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) ("A bedrock condition of admissibility of evidence in any legal contest is its relevance to an issue in the case—that is to say, its tendency to make a fact of consequence to determination of the action more or less probable.").

In this case, Sheppard failed to show how the excluded evidence about his relative's death was relevant to any fact of consequence in this case. He offered the evidence to show his purported fear of law enforcement and explain his flight from Officer Griffin. However, the proffered evidence merely demonstrated that his relative died while he was incarcerated in the county jail in the custody of the Giddings Police Department. Sheppard offered no evidence that the death resulted from any actions or wrongdoing by law enforcement officials, certainly not the actions of the police officers involved in this case as neither officer was employed by the Giddings Police Department at the time of the relative's death. In fact, the record contains evidence that, after being arrested for disorderly conduct, Sheppard's relative died from a drug overdose. There is no logical connection between the actual evidence offered and the proposition sought to be proved. Thus, the trial court could reasonably determine that the proffered evidence was not relevant.

Relying on *Martin v. State*, Sheppard maintains that because the court excluded the evidence of his relative's death, "it cannot be said 'every reasonable hypothesis, other than guilt of the accused, has been excluded.'" *See Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). However, it is not incumbent upon the State to exclude "every reasonable hypothesis other

12

than guilt" for the evidence to be considered sufficient.[3] *Geesa v. State*, 820 S.W.2d 154, 157-61 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000).

Sheppard also asserts in this point of error that the State's failure to provide him with a copy of the autopsy report of the relative violated *Brady v. Maryland*, 373 U.S. 83 (1963) (establishing that due process requires prosecutors to disclose material, exculpatory evidence to defendants). He argues that the autopsy report "provides a rational motive for the flight of Appellant, i.e., fear of mistreatment by the Giddings Police Department." The autopsy report itself is not contained in the record. However, as noted previously, the record indicates that the autopsy report reflected that Sheppard's relative died from a drug overdose—not mistreatment by law enforcement officials. Due process requires the prosecution to disclose exculpatory and impeachment evidence to the defense that is material to either guilt or punishment. *Ex parte Reed*, 271 S.W.3d 698, 726 (Tex. Crim. App. 2008); *see Brady*, 373 U.S. at 87; *United States v. Bagley*, 473 U.S. 667, 676 (1985). "Exculpatory evidence is that which may justify, excuse, or clear the defendant from alleged guilt, whereas impeachment evidence is that which disputes, disparages, denies, or contradicts other evidence." *Pena v. State*, 353 S.W.3d 797, 811–12 (Tex. Crim. App. 2011); *Harm v. State*, 183 S.W.3d 403, 408 (Tex. Crim. App. 2006). Contrary to Sheppard's assertion, the autopsy report indicating that his relative died from a drug overdose while in custody

---

[3] In *Geesa v. State*, the Texas Court of Criminal Appeals expressly disavowed the "reasonable hypothesis analytical construct" for legal sufficiency reviews. *See Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000).

is neither exculpatory nor impeachment evidence. Thus, the failure to provide a copy of the report to Sheppard did not constitute a *Brady* violation.

We hold that the trial court did not abuse its discretion in excluding the evidence concerning the death of Sheppard's relative from a drug overdose while in custody. We overrule Sheppard's second point of error.

*Officer's Prior Drug Arrest*

During cross-examination of Officer Griffin, Sheppard sought to ask the officer "if he had ever been arrested for a drug offense." The record reflects that the officer was arrested and subsequently placed on deferred adjudication probation for 180 days for the misdemeanor offense of possession of less than two ounces of marijuana—seven years before beginning his career in law enforcement and 16 years before testifying at trial. Sheppard argued at trial that Officer Griffin was "portraying himself as . . . a follower of the law and an enforcer of the law" so he was entitled to ask the officer about his prior drug arrest. The State objected pursuant to Rule 609 of the Texas Rules of Evidence.

As a general rule, specific acts of misconduct may not be introduced to impeach a party or a witness. *See Prescott v. State*, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988); Tex. R. Evid. 609(a) (providing that evidence that witness has been convicted of crime is admissible to attack witness's credibility if crime was felony or involved moral turpitude and court determines that probative value of evidence outweighs its prejudicial effect); *see also* Tex. R. Evid. 608(b). An exception exists when a witness makes statements during direct examination concerning his past conduct that suggest he has never been arrested, charged, or convicted of any offense. *Delk v. State*,

14

855 S.W.2d 700, 704 (Tex. Crim. App. 1993), *overruled on other grounds by Ex parte Moreno*, 245 S.W.3d 419, 425 (Tex. Crim. App. 2008); *Prescott*, 744 S.W.2d at 131; *Caldwell v. State*, 356 S.W.3d 42, 50 (Tex. App.—Texarkana 2011, no pet.). Where a witness "creates a false impression of law abiding behavior, 'he opens the door' on his otherwise irrelevant past criminal history and opposing counsel may expose the falsehood." *Delk*, 855 S.W.2d at 704; *see Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007) (reiterating that when witness, on direct examination, makes blanket assertion of fact and thereby leaves false impression with respect to prior criminal behavior or extent of prior troubles with the law, witness "opens the door" to otherwise irrelevant past criminal history and opposing counsel may impeach him by exposing falsehood). This exception is not limited to final convictions. *See Prescott*, 744 S.W.2d at 130–31.

Sheppard's theory is that Officer Griffin opened the door by giving a false impression when he responded to defense counsel's questions about the stereotypical drug dealer, indicating that he had no personal knowledge about drug dealers or drug users. During cross-examination, the following exchange occurred:

> Q. Officer Griffin, how many people would you say you have arrested that you believe were dealers?
>
> A. I couldn't say a number. I couldn't give a specific number.
>
> Q. Okay. Is there is a stereotypical dealer?
>
> A. What do you mean by stereotypical?
>
> Q. Does a typical dealer have to borrow a vehicle to drive around in?
>
> A. I couldn't say. I don't know people's personal situation.

15

Q.      Does a typical dealer work somewhere?

A.      I couldn't say.

Q.      Does a typical dealer have money?

A.      I couldn't say that either.

Q.      Does a typical dealer pay child support?

A.      I couldn't say.

Q.      You formed any opinion about these people you've dealt with all these years?

A.      No, I haven't.

Sheppard maintains that with this testimony, the officer "sa[id] his past involvement with crime was non-existent." Although he acknowledges that Rule 609 limits impeachment with prior criminal history to certain convictions, Sheppard nevertheless argues that pursuant to the false-impression exception described above, he was entitled to ask the officer about his drug arrest. We disagree.

First, this testimony came not during the officer's direct examination, but through cross-examination by defense counsel. The false-impression exception to the general rule of inadmissibility does not permit opposing counsel to rely on his own interrogation during cross-examination to contradict the witness and then admit evidence of collateral matters which would otherwise be inadmissible. *Cf. Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002) ("As a general rule, the defensive theory that the State wishes to rebut through the use of extraneous offense evidence must be elicited on direct examination by the defense and may not be elicited by 'prompting or maneuvering' by the State."); *Lopez v. State*, 928 S.W.2d 528, 531 (Tex. Crim. App. 1996) (impeachment to correct false impression can only be done when defendant has voluntarily

16

testified to collateral matter); *Shipman v. State*, 604 S.W.2d 182, 184–85 (Tex. Crim. App. 1980) (State "may not rely on its own questioning" to get into collateral matters, extraneous offenses, and bad acts that "would otherwise be inadmissible"); *see also Hall v. State*, 161 S.W.3d 142, 156–57 (Tex. App.—Texarkana 2005, pet. ref'd); *Crenshaw v. State*, 125 S.W.3d 651, 656 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Simply put, a party may not bootstrap its way to impeachment as Sheppard attempted to do here.

Second, in order for the false impression exception to apply, the witness must unambiguously create a false impression of law-abiding behavior, thereby permitting introduction of evidence of past criminal history. *See Delk*, 855 S.W.2d at 704–05; *Hernandez v. State*, 351 S.W.3d 156, 159 (Tex. App.—Texarkana 2011, pet. ref'd). Here, the testimony about the stereotypical drug dealer does not create an unambiguous false impression about Officer Griffin's criminal history or law-abiding behavior. It is clear from the context that these questions were about the characteristics of a drug dealer based on the officer's experience with drug dealers as a law enforcement officer. They were not questions related to his personal experience or conduct prior to his law enforcement career or concerning his own criminal history. His answers about his lack of personal knowledge of drug dealers did not create a false impression about his criminal history.

At no time during direct examination did Officer Griffin make any statements concerning his past conduct that suggested he had never been arrested, charged, or convicted of any offense nor did he create a false impression of law abiding behavior. Accordingly, we hold that the trial court did not abuse its discretion in excluding the evidence concerning the officer's prior drug arrest. We overrule Sheppard's third point of error.

17

## CONCLUSION

Having found that the circumstantial evidence is sufficient for a rational jury to conclude that Sheppard possessed the cocaine recovered from the ground in front of his truck, we hold the evidence is sufficient to support his conviction for possession of a controlled substance. We further hold that the trial court did not abuse its discretion in excluding evidence of the death of Sheppard's relative while in custody or the arresting officer's prior drug arrest. Accordingly, we affirm the judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed: December 21, 2012

Do Not Publish