### Shamika Yvonne SATCHELL, Appellant,

### v.

### The STATE of Texas, Appellee.

### No. 01–06–00659–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 10, 2010.

Discretionary Review Refused
Nov. 11, 2010.

Abraham M. Fisch, Law Office of Anthony M. Fisch, Houston, TX, for Appellant.

Alan Curry, Chief Prosecutor, Appellate Division, Harris County District Attorney's Office, Carol M. Cameron, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, ALCALA, and MASSENGALE.

## OPINION

TERRY JENNINGS, Justice.

A jury found appellant, Shamika Yvonne Satchell, guilty of the offense of possession of Phencyclidine ("PCP") weighing at least 400 grams by aggregate weight,[1] and the

---

1. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(8), 481.115(f) (Vernon Supp. 2009).

trial court assessed her punishment at confinement for 10 years, suspended the sentence, and placed appellant on community supervision for 10 years. In three points of error, appellant contends that the evidence is legally and factually insufficient to support her conviction and the trial court erred in instructing the jury that it could find appellant guilty of the offense of possession of PCP as a lesser-included offense of the offense of possession with intent to deliver PCP.[2]

We affirm.

## Background

Houston Police Department ("HPD") Narcotics Investigator A. Vanderberry testified that a confidential informant, whom he knew from past experience to be "reliable and credible," had informed him that "an assault rifle and narcotics were being kept" at appellant's apartment and PCP was being sold from there. Vanderberry began surveillance of the apartment and set up a "controlled buy," in which the informant would buy PCP from appellant's boyfriend, Taj Smith, at the apartment. During surveillance of the controlled buy, Vanderberry saw a black female enter the apartment and remain there while the informant made the buy, but he could not identify the woman as appellant. Vanderberry obtained a combination search warrant for the apartment and arrest warrant for Smith. When Vanderberry's team later began surveillance on the apartment in preparation for executing the warrants, he saw Smith driving appellant's car, with appellant and two children as his passengers. Shortly after they had arrived at appellant's apartment at 11:00 p.m., Vanderberry and his team detained appellant, arrested Smith, and executed the search warrant.

When the officers entered to search the apartment, "the smell of PCP was so strong" that they had "problems breathing, their eyes were tearing up." Vanderberry explained that PCP has "a very distinct odor" and a "very harsh chemical smell." In a closed cabinet under the kitchen sink, officers found a Pine–Sol bottle and two Gatorade bottles containing PCP liquid, between 100 and 200 vials used to distribute PCP, a steel marijuana grinder, latex gloves for handling PCP, and a "baby bottle" with trace amounts of codeine. On the kitchen countertop, officers found "loose-leaf" marijuana, a "Delaware Punch" bottle containing codeine, and a receipt for the purchase of ten vanilla extract bottles, which are commonly used to distribute PCP. Vanderberry explained that marijuana is commonly used to distribute PCP by lacing the marijuana with PCP. In another closed kitchen cabinet, officers found two "Pyrex beakers" with cocaine residue. Stuffed inside or behind the couch in the living room, officers found an assault rifle and two ammunition clips. In the master bedroom in a closed drawer in a nightstand, officers found ecstasy and hydrocodone pills in bottles with Smith's name on the labels, $1,360 in cash, and Smith's identification. Vanderberry opined that the apartment was "a distribution center for narcotics."

On cross-examination, Vanderberry conceded that Smith was "the target of the investigation" and the person that he believed to be the "drug dealer." He did not observe appellant "handle [the] drugs" or "deal the drugs." The confidential informant provided "no intelligence" about appellant but relayed that appellant was "not engaged in any activity other than being there when the deal was going on." Appellant's fingerprints were not found on any of the items of contraband because

2. *See id.* § 481.112 (Vernon Supp. 2009).

none of them was "conducive" for usable prints. Vanderberry agreed that appellant did not flee, take evasive actions, get nervous, or give "shifty, inconsistent answers" when his team detained her.

HPD Narcotics Officer R. Chaison testified that over several days during his surveillance of appellant's apartment, he observed significant "foot traffic" in and out of the apartment. As he helped to execute the search warrant, Chaison smelled "a strong musty, musty smell" coming from appellant's apartment. He obtained consent from appellant to search her car, where he found a "marijuana cigar in the ashtray" and a "pharmaceutical" bottle of codeine under the driver's seat. On cross-examination, Chaison admitted that he did not see appellant handle or sell narcotics. He confirmed that Smith was the target of the investigation, and appellant was not "on the radar screen." He could provide no "direct" evidence that appellant solicited, assisted, aided, or encouraged Smith's dealing narcotics.

HPD Narcotics Officer D. De Blanc testified that when the warrants were served, he detained appellant outside of her apartment and informed her of her legal rights. After arresting appellant, De Blanc videotaped an interview of her regarding the narcotics. During the interview, appellant stated that she did not "know anything about PCP," the narcotics were "not hers," and she had never used or sold narcotics.

Federal Bureau of Alcohol, Tobacco, and Firearms Agent M. Daughtery testified that she later interviewed appellant regarding a federal investigation of Smith. Daughtery explained that after appellant "initially denied knowing anything" about the narcotics found in her apartment, she "acknowledged that she did know about the narcotics" and she "knew [Smith] was dealing drugs," but she denied that she was involved with or used the narcotics.

Appellant also admitted that she and the children went to another room whenever Smith's friends "came over to smoke," Smith had no job but "had a lot of money" and helped her with the rent, Smith carried a firearm or had one nearby when he "dealt dope," she had seen an assault-rifle type firearm at their prior residence, and Smith had once left a handgun in her car.

Kreshelle Dixon, a co-worker of appellant, testified that appellant orally subleased the apartment from her. Appellant initially moved into the apartment with her daughter, and Smith moved in a "short time" later and had been at the apartment about eight months at the time the officers executed the warrant.

HPD Crime Lab Chemist R. Rodriguez testified that the PCP recovered from appellant's apartment weighed 1.44 kilograms, or a little over 1,400 grams, and the codeine weighed 977.5 grams. Rodriguez agreed that PCP has a "strong odor," which she described as "an ether-type of smell."

Appellant testified that when Officer De Blanc initially detained her, she had responded "No" when he asked if she was "Kreshelle Dixon." She then identified herself and stated that she resided at the apartment number listed in the warrant. When De Blanc told appellant that PCP was being sold out of the apartment, she told him that she did not "know anything about what's going on." She explained that she was not familiar with PCP and had not seen the bottles of narcotics and narcotics paraphernalia found in the cabinet under the kitchen sink in her apartment. Appellant identified her car for De Blanc, and she gave consent for it to be searched. After she saw De Blanc remove the bottle of codeine from beneath the driver's seat of her car, she denied that it was hers or that she had seen it before

and explained that Smith also drove her car.

Appellant also denied admitting to Agent Daughtery that she knew that Smith had been dealing narcotics, and she explained that even if someone "should have known" about the PCP, she "didn't know [Smith] was selling drugs." She also denied knowledge of the bottles of PCP in the kitchen cabinet because she kept her cleaning supplies elsewhere.

On cross-examination, appellant conceded that the bottles of PCP were found in "her apartment," but she denied knowing that the people who came to her apartment were there to buy PCP from Smith. She admitted that she had told Officer De Blanc that the PCP was "not hers" but did not tell him that she "never saw" the PCP. She agreed that she and Smith shared their cars and Smith helped her with the rent. When a container of PCP was opened in court, appellant agreed that it "smelled strongly," but she explained that when she smelled the odor in the apartment, it smelled like "mildewy carpet."

### Sufficiency of the Evidence

■ ⋅In her first and second points of error, appellant argues that the evidence is legally and factually insufficient to support her conviction because the "logical force" of the evidence is insufficient to establish that she knowingly possessed the PCP or "act[ed] with the intent to promote or assist Smith in possessing the PCP."

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)).

Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988); *Allen v. State*, 249 S.W.3d 680, 688 (Tex.App.-Austin 2008, no pet.). Our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which she is accused. *Williams*, 235 S.W.3d at 750. "If, based on all the evidence, a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal." *Fisher v. State*, 851 S.W.2d 298, 302 (Tex.Crim.App.1993) (quoting *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim.App.1992)); *see also Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). In our analysis, we give deference to the responsibility of the fact-finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. If the undisputed facts allow only one logical inference, neither jurors nor the reviewing court may disregard those facts. *Evans v. State*, 202 S.W.3d 158, 162–63 (Tex.Crim.App.2006). Also, if circumstantial evidence provides no more than a suspicion, the fact-finder may not reach a speculative conclusion. *Louis v. State*, 159 S.W.3d 236, 246 (Tex.App.-Beaumont 2005, pet. ref'd).

In a factual sufficiency review, we view all the evidence in a neutral light, both for and against the finding, and set aside the verdict if the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, i.e., that the verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although legally sufficient, is nevertheless against the great

weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006). We note that a jury is in the best position to evaluate the credibility of witnesses, and we afford due deference to the jury's determinations. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim.App.2006). Although we should always be "mindful" that a jury is in the best position to decide the facts and that we should not order a new trial simply because we disagree with the verdict, it is "the very nature of a factual-sufficiency review that ... authorizes an appellate court, albeit to a very limited degree, to act in the capacity of a so-called 'thirteenth juror.' " *Watson*, 204 S.W.3d at 414, 416–17. Thus, when an appellate court is "able to say, with some objective basis in the record, that the *great weight and preponderance* of the (albeit legally sufficient) evidence contradicts the jury's verdict[,] ... it is justified in exercising its appellate fact jurisdiction to order a new trial." *Id.* at 417.

▇▇▇ An individual commits the offense of possession of PCP if she "knowingly or intentionally possesses" PCP by "aggregate weight, including adulterants or dilutants" in an amount of "400 grams or more." TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(8), 481.115(a), (f) (Vernon Supp. 2009). To prove possession, the State must prove that an accused (1) exercised actual care, custody, control, or management over the substance and (2) knew that the matter possessed was a controlled substance. TEX. PENAL CODE ANN. § 1.07(39) (Vernon Supp. 2009); *Evans*, 202 S.W.3d at 161. Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of her control of the thing for a sufficient time to permit her to terminate her control. TEX. PENAL CODE ANN. § 6.01(b) (Vernon 2003). It is well settled that "mere presence in

the vicinity of contraband that is being used or possessed by others does not, by itself, support a finding that the accused is a joint possessor or a party to [an] offense." *Villarreal Lopez v. State*, 267 S.W.3d 85, 91 (Tex.App.-Corpus Christi 2008, no pet.); *see also Garcia v. State*, 218 S.W.3d 756, 763 (Tex.App.-Houston [1st Dist.] 2007, no pet.); *Allen v. State*, 249 S.W.3d 680, 691 (Tex.App.-Austin 2008, no pet.). Moreover mere presence does not make an accused a party to joint possession "even if the accused knows of the existence of the contraband and has knowledge of an offense." *Villarreal Lopez*, 267 S.W.3d at 91; *see also Garcia*, 218 S.W.3d at 763; *Allen*, 249 S.W.3d at 691. Rather, an accused's presence at the scene of an offense, while not sufficient to support her conviction, is "a circumstance tending to prove guilt which, combined with other facts, may suffice to show that the accused was a participant." *Thomas v. State*, 645 S.W.2d 798, 800 (Tex.Crim.App.1983).

▇▇▇ Evidence in a knowing possession of contraband case must amount to more than mere conjecture. *Dickey v. State*, 693 S.W.2d 386, 389 (Tex.Crim.App. 1984). When, as here, the accused is not in exclusive possession of the place where contraband is found, additional independent facts and circumstances must "link" the accused to the contraband "in such a way that it can be concluded that the accused had knowledge of the contraband and exercised control over it." *Roberson v. State*, 80 S.W.3d 730, 735 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). The evidence must demonstrate that the link between the accused and the contraband "generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it." *Id.* In other words, the State must establish that the accused's connection with the narcotics was more than just fortuitous. *Po-*

*indexter v. State*, 153 S.W.3d 402, 405–06 (Tex.Crim.App.2005). The Texas Court of Criminal Appeals has explained that the purpose of the links rule is to "protect the innocent bystander from conviction based solely upon [her] fortuitous proximity to someone else's [narcotics]." *Id.* at 406. The links rule "simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or friend— may jointly possess property like a house but not necessarily jointly possess the contraband found in that house." *Id.*

 Texas courts have identified "many non-exhaustive factors" that may demonstrate a link to contraband. *Roberson*, 80 S.W.3d at 735. The factors include whether the narcotics were (1) in plain view; (2) conveniently accessible to the accused; (3) in a place owned, rented, possessed or controlled by the accused; (4) in a car driven by the accused; (5) in close proximity to the accused; or (6) found in an enclosed space; and whether (7) the odor of narcotics was present; (8) drug paraphernalia was in view of or found on the accused; (9) the accused was present; (10) the accused's conduct indicated a consciousness of guilt (e.g., furtive gestures, flight, conflicting statements); (11) the accused had a special relationship to the drug; (12) the accused possessed other contraband or narcotics when arrested; (13) the accused was under the influence of narcotics when arrested; (14) the accused made affirmative statements connecting her to the contraband; and (15) the accused was found with a large amount of cash. *Evans*, 202 S.W.3d at 162 n. 12; *Roberson*, 80 S.W.3d at 735 n. 2; *Villegas v. State*, 871 S.W.2d 894, 896–97 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). These factors constitute "a shorthand way of expressing what must be proven to establish that [narcotics] were possessed knowingly." *Roberson*, 80 S.W.3d at 735.

The number of linking factors present is not as important as the "logical force" they create to prove that an offense was committed. *Id.* The absence of various links does not constitute evidence of innocence to be weighed against the links present. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex.Crim.App.1976); *James v. State*, 264 S.W.3d 215, 219 (Tex.App.-Houston [1st Dist.] 2008, pet. ref'd).

In support of her arguments that the evidence is legally and factually insufficient to support her conviction, appellant asserts that it appears she was arrested only because the narcotics were found in "her apartment" and she lived there; although she resided at the apartment and was present when the PCP was found, the PCP was not in plain view but in "three closed containers in a closed cabinet under the kitchen sink"; she was not the "target" of the investigation and had a "respectable job" and no criminal history; she was not "under the influence of drugs" and had no "drugs or paraphernalia" on her person; she was naïve and not "street smart"; she did nothing to indicate a consciousness of guilt; although the PCP had a "strong odor," she was not familiar with it and thought it smelled like "mildewy carpet," and the odor was not such that an "ordinary person" would be familiar with it; the presence of marijuana in plain view was not automatically suggestive that PCP was present or that she knew PCP was present; and the presence of other narcotics and cash in "[non-obvious] or in closed spaces" did "nothing to show she knew about the PCP."

 Viewing the evidence in the light most favorable to the verdict, appellant admitted that she leased and resided at the apartment where the officers found the PCP. Kreshelle Dixon testified that she subleased the apartment to appellant and Smith subsequently moved into the apart-

ment with appellant and her child. Being the owner of a residence in which contraband is found may constitute a significant factor in establishing an accused's knowing possession of narcotics. *See Moulden v. State*, 576 S.W.2d 817, 820 (Tex.Crim.App. 1978). Agent Daughtery testified that after appellant initially denied knowing anything about the narcotics found in her apartment, she "acknowledged that she did know about the narcotics." She also knew that Smith was "dealing drugs." Thus, the jury could have reasonably inferred that appellant, knowing that Smith was "dealing" narcotics, allowed him to move into her apartment, where he then stored and sold PCP.

The evidence of appellant's knowledge of the narcotics found in *her* apartment, her knowledge that Smith was "dealing drugs," and her allowing Smith to move into the apartment that she had subleased, supports an implied finding by the jury that she knowingly exercised control over the PCP. *See* Tex. Penal Code Ann. § 6.01(b). Thus, the evidence in this case stands in contrast to that in *Allen*, in which the Austin Court of Appeals held legally insufficient to support a conviction for the offense of possession of cocaine evidence that the defendant was present in an apartment in which she did not reside, a platter containing cocaine was found in the apartment, and her fingerprint was on the platter, but no evidence suggested when she might have handled the platter. 249 S.W.3d at 695–97, 703.

Here, moreover, the confidential informant reported that appellant was present during the controlled buy, and Officer Chaison testified that appellant was present during the "foot traffic" that was indicative of narcotics trafficking. A significant quantity of PCP—over 1,400 grams—was found in a kitchen cabinet that was accessible to appellant. Marijuana and codeine were found in plain view while cocaine residue, a marijuana grinder, gloves, vials, an assault rifle, ecstasy pills, and hydrocodone pills were found elsewhere throughout appellant's apartment, and codeine was found in her car. The odor of PCP so permeated the apartment that the arresting officers had trouble breathing. We conclude that the "logical force" of these facts, together with appellant's admissions that she knew about the narcotics, knew Smith was "dealing" narcotics, and allowed him to move into her apartment, is sufficient to support a reasonable inference that appellant knowingly possessed the PCP. *See Roberson*, 80 S.W.3d at 735. Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction for the offense of possession of PCP.

Viewing the evidence in a neutral light, Vanderberry did testify that Smith was the "target" of the investigation and "in control" of the apartment and appellant was not "on the radar screen" of the investigation until he determined that she resided at the apartment. Also, the confidential informant did report that appellant did not participate in the controlled buy. It is also true that the evidence shows that the odor of PCP, described as "chemical," "musty", "ether-like" and "mildewy," is not common. And, the PCP was not found in plain view, but rather in the closed, undersink kitchen cabinet. Appellant denied using or selling narcotics, no narcotics or paraphernalia were found on her person, and she did not appear to be under the influence of narcotics or exhibit a consciousness of guilt when she was arrested. Appellant also denied admitting to Agent Daughtery that she knew about the narcotics or knew that Smith was "dealing drugs." However, as noted above, Daughtery testified that appellant admitted that she knew that Smith was "dealing" narcotics, and yet she allowed him to move into

the apartment that she had subleased, where Smith then stored and sold PCP. Again, these facts support an implied finding by the jury that appellant knowingly exercised control over the PCP. *See* Tex. Penal Code Ann. § 6.01(b). We conclude that the verdict is not "clearly wrong and manifestly unjust" and the proof of guilt is not against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414–15. Accordingly, we hold that the evidence is factually sufficient to support appellant's conviction of the offense of possession of PCP.

We overrule appellant's first and second points of error.

### Lesser–Included Offense

██ In her third point of error, appellant argues that the trial court erred in instructing the jury on the lesser-included offense of possession of PCP because "there was no evidence that if appellant was guilty at all, she was only guilty of the lesser offense."

██ A Harris County grand jury returned a true bill of indictment, accusing appellant of the offense of possession with intent to deliver PCP. However, at the closing of the evidence, the trial court, at the State's request, instructed the jury on the lesser-included offense of possession of PCP. In support of her argument that the trial court erred in giving the instruction, appellant relies on *Arevalo v. State*, 943 S.W.2d 887, 890 (Tex.Crim.App.1997). She asserts that the Texas Court of Criminal Appeals' holding in *Arevalo* requires that before a trial court may instruct a jury on a lesser-included offense, the lesser-included offense must have been "included within the proof necessary to establish the offense charged" *and* "some evidence must exist in the record that if the defendant is guilty, [she] is guilty only of the lesser offense." Appellant concedes that the of-

fense of possession of PCP is a lesser-included offense of possession with intent to deliver PCP, but she asserts that there is "no evidence from which a jury could rationally acquit [appellant] of the greater offense while convicting her of the lesser offense." Appellant's reliance on *Arevalo* is misplaced. Here, the State requested the instruction, and in *Grey v. State*, the Texas Court of Criminal Appeals overruled *Arevalo*, holding that to obtain a lesser-included offense instruction, the State need only show that its requested instruction describes a lesser-included offense of the charged offense. 298 S.W.3d 644, 651 (Tex.Crim.App.2009).

Appellant conceded that the offense of possession of PCP is a lesser-included offense of possession with intent to deliver PCP, and the State was not required to show "some evidence" in the record that appellant was guilty only of the offense of possession of PCP. *Id.* Accordingly, we hold the trial court did not err in instructing the jury on the lesser-included offense of possession of PCP.

We overrule appellant's third point of error.

### Conclusion

We affirm the judgment of the trial court.