ACCEPTED
01-14-00280-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/13/2015 3:10:59 PM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00280-CR**

In the
**Court of Appeals**
For the
**First District of Texas**
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/13/2015 3:10:59 PM

CHRISTOPHER A. PRINE
Clerk

───────────◆───────────

**No. 1376587**
In the 262nd Criminal District Court
Of Harris County, Texas

───────────◆───────────

**LOUIS STREDIC**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

───────────◆───────────

STATE'S APPELLATE BRIEF

───────────◆───────────

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741

**JAMIE BURRO**
**JAMES O'DONNELL**
Assistant District Attorneys

1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone: (713) 755-5826
Fax Number: (713) 755-5809
Hervey_Melissa@dao.hctx.net

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 9.4(g) and Texas Rule of Appellate Procedure 39.1, the State requests oral argument only if appellant requests oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rules of Appellate Procedure 38.1(a) and 38.2(a)(1)(A), a complete list of the names of all interested parties, and the names and addresses of all trial and appellate counsel, is provided below:

*Complainant or Victim:*

**Lesley Thomas**

*Counsel for the State:*

**Devon Anderson**—District Attorney of Harris County

**Melissa P. Hervey**—Assistant District Attorney on appeal

**Jamie Burro; James "Jim" O'Donnell**—Assistant District Attorneys at trial

Harris County District Attorney's Office
1201 Franklin Street, Suite 600
Houston, Texas 77002

*Appellant or Criminal Defendant:*

**Louis Stredic**

i

*Counsel for Appellant:*

> **Cynthia Henley**—Defense Counsel on appeal
>
> 7626 East Jordan Cove
> Houston, Texas 77055
>
> **Ricardo N. Gonzalez**—Defense Counsel at trial
>
> 7015 Gulf Freeway, Suite 215
> Houston, Texas 77087
>
> **Jonathan "Jon" Parchman**—Defense Counsel at trial
>
> 2002 Timberloch Place, Suite 200
> The Woodlands, Texas 77380

*Trial Judge:*

> **Honorable Denise Bradley**—Presiding Judge of the 262nd Criminal
> District Court

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................i

IDENTIFICATION OF THE PARTIES ..................................................i

TABLE OF CONTENTS................................................................ ii

INDEX OF AUTHORITIES........................................................... iii

STATEMENT OF THE CASE.........................................................1

STATEMENT OF FACTS .............................................................2

SUMMARY OF THE ARGUMENT ...................................................6

REPLY TO APPELLANT'S SOLE POINT OF ERROR ........................................ 6

    **I.** *STANDARD OF REVIEW AND APPLICABLE LAW REGARDING JURY CHARGE ERROR* ........................................................................... 7

    **II.** *THE STATE AND THE DEFENDANT HAVE DIFFERING OBLIGATIONS TO DEMONSTRATE THAT THEY ARE ENTITLED TO THE SUBMISSION OF THEIR REQUESTED LESSER-INCLUDED-OFFENSE INSTRUCTIONS* .......... 8

    **III.** *THE TRIAL COURT DID NOT ERR BY GRANTING THE STATE'S REQUEST FOR A JURY INSTRUCTION ON THE LESSER-INCLUDED OFFENSE OF ROBBERY BY THREAT* ......................................... 12

CONCLUSION AND PRAYER ....................................................................... 15

CERTIFICATE OF COMPLIANCE ................................................................. 16

CERTIFICATE OF SERVICE ......................................................................... 17

## INDEX OF AUTHORITIES

**CASES**

*Almanza v. State*,
   686 S.W.2d 157 (Tex. Crim. App. 1984) ................................................. 8

*Barrios v. State*,
   283 S.W.3d 348 (Tex. Crim. App. 2009) ............................................... 7

*Casey v. State*,
   215 S.W.3d 870 (Tex. Crim. App. 2007) ............................................... 7

*Goad v. State*,
   354 S.W.3d 443 (Tex. Crim. App. 2011) .......................................... 8, 10

*Grey v. State*,
   298 S.W.3d 644 (Tex. Crim. App. 2009) .............................. 6, 11, 12, 13, 14

*Irving v. State*,
   176 S.W.3d 842 (Tex. Crim. App. 2005) ............................................... 10

*Jacob v. State*,
892 S.W.2d 905 (Tex. Crim. App. 1995)................................................................11

*McKithan v. State*,
324 S.W.3d 582 (Tex. Crim. App. 2010)..............................................................9

*Ngo v. State*,
175 S.W.3d 738 (Tex. Crim. App. 2008)..............................................................7

*Oursbourn v. State*,
259 S.W.3d 159 (Tex. Crim. App. 2008)..............................................................8

*Penaloza v. State*,
349 S.W.3d 709 (Tex. App.—
Houston [14th Dist.] 2011, pet. ref'd)................................................................14

*Reeves v. State*,
420 S.W.3d 812 (Tex. Crim. App. 2013)..............................................................8

*Rice v. State*,
333 S.W.3d 140 (Tex. Crim. App. 2011)................................................ 8, 9, 10

*Rousseau v. State*,
855 S.W.2d 666 (Tex. Crim. App. 1993)..........................................................8, 10

*Royster v. State*,
622 S.W.2d 442 (Tex. Crim. App. 1981)..............................................................8

*Salazar v. State*,
284 S.W.3d 874 (Tex. Crim. App. 2009)..............................................................10

*Satchell v. State*,
321 S.W.3d 127 (Tex. App.—
Houston [1st Dist.] 2010, pet. ref'd) ...................................................... 12, 13, 14

*Schweinle v. State*,
915 S.W.2d 17 (Tex. Crim. App. 1996)................................................................11

*Skinner v. State*,
956 S.W.2d 532 (Tex. Crim. App. 1997)..............................................................11

*Wesbrook v. State*,
29 S.W.3d 103 (Tex. Crim. App. 2000)..............................................................7

*Young v. State*,
428 S.W.3d 172 (Tex. App.—
Houston [1st Dist.] 2014, pet. ref'd) ................................................................13

## STATUTES

TEX. CODE CRIM. PROC. ANN. art. 37.09..............................................................9, 13

TEX. PENAL CODE ANN. § 29.02(a)(2)..................................................................1, 13

TEX. PENAL CODE ANN. § 29.03(a)(2) .................................................................1, 13

## RULES

TEX. R. APP. P. 9.4(g)................................................................................................ i

TEX. R. APP. P. 9.4(i)...............................................................................................16

TEX. R. APP. P. 38.2(a)(1)(A) .................................................................................. i

TEX. R. APP. P. 39.1.................................................................................................. i

**TO THE HONORABLE COURT OF APPEALS:**

**STATEMENT OF THE CASE**

The State charged appellant by indictment with aggravated robbery by threat with a deadly weapon. (CR – 15);[1] *see* TEX. PENAL CODE ANN. § 29.03(a)(2); TEX. PENAL CODE ANN. § 29.02(a)(2). In a Notice of Intent to Seek Punishment Enhancement, the State also alleged that appellant had previously been convicted of two felony offenses. (CR – 36). The jury found appellant guilty of the lesser-included offense of robbery by threat. (CR – 74-75); (RR X – 149-51). On March 13, 2014, appellant pled "true" to the State's punishment-enhancement allegations, and appellant and the State informed the trial court that the parties had reached an agreement regarding punishment; the trial court then found the State's punishment-enhancement allegations "true" and sentenced appellant to confinement in the Texas Department of Criminal Justice, Correctional Institutions Division, for fifty years in accordance with the State's and appellant's agreement. (CR – 75-76); (RR V – 12). Appellant timely filed written notice of appeal on March 13, 2014. (CR – 78).

———————◆———————

---

[1] The Clerk's Record consists of one volume, hereinafter referenced as (CR – [page number]). The Court Reporter's Record consists of six volumes, which will be referenced as (RR [I-VI] – [page number]). State's Exhibits admitted at trial will be referenced as (RR VI – SX [exhibit number]).

## STATEMENT OF FACTS

Lesley Thomas traveled from Houston to Dallas to visit her family and friends, and to watch the Super Bowl, over the first weekend of February 2013. (RR IV – 12). To get to Dallas and back to Houston, Thomas used the Megabus express bus service, leaving her silver Nissan Altima sedan in the Megabus parking lot for the duration of her trip. (RR IV – 12-13); *see* (RR VI – SX 2-3). Shortly after midnight on February 5, 2013, Thomas exited the Megabus that she had ridden back to Houston, collected her luggage, and began walking to her car. (RR IV – 16-18). While en route to her vehicle, Thomas noticed appellant at a METRO municipal bus station across the street from the Megabus lot. (RR IV – 18); *see* (RR VI – SX 5) . Thomas paid little mind to appellant, believing that he was a security guard because of his attire—a navy blue button-down shirt with a name badge and badge on it, and matching blue "work" pants—which appeared to Thomas to be a security guard uniform. (RR IV – 19).

Thomas reached her Altima and put her baggage in the trunk, and then began wiping condensation off of her car windows with an old sweater. (RR IV – 20). As Thomas walked around her car towards the driver's door, she noticed that appellant had crossed the street and was "inching closer" to her. (RR IV – 20, 34-35). Thomas observed appellant "reaching into his pocket" while he walked

2

towards her, but Thomas remained unconcerned because she thought appellant might have been reaching for a cigarette. (RR IV – 20-21, 35).

Thomas reached the driver's door of her Altima and, as she "grabbed [her] driver's side door handle[,]...[appellant] came behind [her] and placed a gun in the lower part of her back." (RR IV – 22, 36). Thomas panicked and began screaming, hoping to draw help from other people who were standing near the METRO station. (RR IV – 22). Still behind Thomas, appellant "placed his left arm across [her] chest to restrain [her]," knocking-off Thomas's glasses in the process, and "told [Thomas] if [she] did not stop screaming he was going to blow [her] goddamn brains out." (RR IV – 23, 36-37). Terrified that appellant would shoot her, Thomas was immediately quiet. (RR IV – 23). Appellant then forced Thomas to open her driver's door, get into her car, and climb over the center console of the vehicle to get into the front passenger seat. (RR IV – 23, 37, 45). Appellant followed Thomas into her Altima, sitting in the driver's seat of the car and keeping the gun "in [her] lower back" as she maneuvered to the passenger seat. (RR IV – 23-24, 45).

Once appellant and Thomas were both seated in Thomas's vehicle, appellant demanded cash and credit cards from her. (RR IV – 24). Thomas gave appellant $140 in cash, and then gave him her entire purse. (RR IV – 24). Unsatisfied, appellant made Thomas put her car keys in the ignition and turn on the vehicle so

3

that appellant could see how much gas was in the Altima's gas tank. (RR IV – 25). Seeing that the gas tank was one-quarter full, appellant told Thomas to look away from him, and then threatened her, "[I]f you don't get out of this car right now, I'm going to blow your goddamn brains out." (RR IV – 25). Thomas rapidly exited her vehicle and ran to the METRO station across the street. (RR IV – 26). Appellant watched Thomas flee, and then drove away in Thomas's Altima. (RR IV – 26).

Thomas told the bystanders at the METRO station that she had just been carjacked, and borrowed a cell phone from a stranger to call the police. (RR IV – 26). When several officers with the Houston Police Department (HPD) responded to Thomas's location five or six minutes later, Thomas gave the officers the license plate number and a description of her Altima, a description of appellant, and her account of the robbery. (RR IV – 27, 39-40, 52, 57-62). The police put out a BOLO, or a "be on the lookout" call, over the police radio with Thomas's descriptions of appellant and the Altima, and also reported that the Altima had been stolen. (RR IV – 53, 55). An officer then drove Thomas to a hospital where Thomas's aunt worked, so that Thomas would have a means to get home and then into her residence with her aunt's spare key. (RR IV – 28, 62).

Approximately seven hours later that morning, at 7:00 AM, a woman called the Alvin Police Department in Brazoria County to report that appellant, whom the

4

woman knew, was "knocking on her door trying to gain access to her house." (RR IV – 67, 74). Two Alvin police officers drove to the woman's address and, upon their arrival, observed appellant backing a silver Nissan Altima away from the residence. (RR IV – 67-68, 74). One of the officers, Officer Foley, detained appellant and asked him for his driver's license; appellant handed Foley another person's license and told Foley that appellant did not have his own license with him. (RR IV – 68, 70, 74). Foley arrested appellant for driving without his driver's license and placed appellant in the back of Foley's patrol car. (RR IV – 68, 70). Foley then "ran" the license plate number of the Altima and discovered that HPD had reported the vehicle as stolen. (RR IV – 68-69). Foley transported appellant to the Alvin Police Department to book him and, while inventorying appellant's personal possessions, found Thomas's driver's license in one of appellant's pants pockets. (RR IV – 69). When Foley questioned appellant about Thomas's license, appellant told Foley that Thomas was appellant's wife. (RR IV – 69). Foley then contacted HPD to notify the department that he had appellant in custody and that he had apprehended appellant with a vehicle that HPD had listed as stolen. (RR IV – 69, 77).

Officer Crank, an investigator in the HPD Robbery Division, obtained appellant's name and date of birth from Alvin Police Department, and then prepared a photographic array containing photographs of appellant and five other

5

men. (RR IV – 77, 79); *see* (RR VI – SX 8). On February 6, 2013, Crank met Thomas at her home and administered the photographic array to her. (RR IV – 29-32, 78, 87); *see* (RR VI – SX 7). Thomas positively identified appellant "in a matter of seconds" as the man who had robbed her, and was "[e]xtremely confident" in her identification. (RR IV – 32, 46-47, 80, 82, 91); *see* (RR VI – SX 8).

——————◆——————

## SUMMARY OF THE ARGUMENT

In light of *Grey v. State*, 298 S.W.3d 644 (Tex. Crim. App. 2009), the trial court correctly instructed the jury on the lesser offense of robbery by threat, at the State's request and over appellant's objection, because robbery by threat is a lesser-included offense of aggravated robbery by threat with a deadly weapon, as charged.

——————◆——————

## REPLY TO APPELLANT'S SOLE POINT OF ERROR

Appellant contends in his only complaint on appeal that the trial court erred by including in the jury charge an instruction regarding the lesser-included offense of robbery by threat, over appellant's objection at trial. Essentially, appellant contends that the State was not entitled to such an instruction because the record lacks evidence which establishes robbery by threat as a valid, rational alternative to

6

the charged offense, per the second prong of the *Royster-Rousseau* test for lesser-included-offense instructions.  *See* (Appellant's Brief – 11-13).

## I. *Standard of Review and Applicable Law Regarding Jury Charge Error*

A trial court's composition of the jury charge, including the addition or omission of requested or necessary instructions, is reviewed on appeal for abuse of discretion.  *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000) (finding that a trial court did not abuse its discretion by declining to submit a requested jury instruction). A trial court abuses its discretion only when its ruling lies outside the zone of reasonable disagreement.  *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  When a party alleges jury charge error, a reviewing court must first determine whether error was actually committed by the trial court. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).  If error is found in the jury charge, the appellate court must then determine whether the error resulted in sufficient harm to the accused to warrant reversal.  *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2008).

The degree of harm which necessitates reversal depends upon whether the complaining party preserved the jury charge error.  *Ngo*, 175 S.W.3d at 743.  When the complained-of charge error was properly preserved—either by a specific request for a jury instruction or by an objection to the omission of the desired instruction from the jury charge—the record need only show that the defendant

suffered "some harm" for reversal to be warranted. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *see Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008) (stating that a defendant must submit a proposed jury instruction or object to the lack of the requested jury instruction to preserve error on the issue). If error was not properly preserved, however, reversal is required only if the defendant shows that the error was "fundamental" and that he suffered "egregious harm" thereby. *Reeves*, 420 S.W.3d at 816; *Almanza*, 686 S.W.2d at 171.

## II. The State and the Defendant have Differing Obligations to Demonstrate that they are Entitled to the Submission of their Requested Lesser-Included-Offense Instructions

While either the State or the defendant may request a lesser-included-offense instruction, the defendant has a more onerous task to prove that he is entitled to such an instruction. A defendant is entitled to an instruction on a lesser-included offense only when the defense fulfills both conditions of the two-part *Royster-Rousseau* test. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011); *see generally Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981); *see also Rousseau v. State*, 855 S.W.2d 666 (Tex. Crim. App. 1993). Under that test, the defendant must first request an instruction for a lesser offense that is actually a lesser-included offense of the crime charged in the indictment. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). This requirement is a purely legal

question, asking whether all of the elements of the lesser offense are contained within those of the greater offense, and thus does not depend on the evidence produced at trial. *Rice*, 333 S.W.3d at 144; *see also Hall v. State*, 225 S.W.3d 524, 531, 535 (Tex. Crim. App. 2007).

> An offense is a "lesser included offense" of a greater offense if:
>
> (1) it is established by proof of the same or less than all of the facts required to establish the commission of the offense charged;
>
> (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
>
> (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
>
> (4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX. CODE CRIM. PROC. ANN. art. 37.09.

A court must "'examine the elements of the lesser offense and decide whether they are functionally the same or less than those required to prove the charged offense[]'" before it may proceed with any evaluation of the amount and quality of the evidence introduced. *Rice*, 333 S.W.3d at 144-45 (quoting *McKithan v. State*, 324 S.W.3d 582, 588 (Tex. Crim. App. 2010)). As explained in *Hall v. State*, 225 S.W.3d 524, 531, 535 (Tex. Crim. App. 2007), a reviewing court engaged in this initial step must determine which lesser-included offenses, if any, are applicable to a given case based on the elements and facts of the greater offense

9

as alleged in the charging instrument. *Hall*, 225 S.W.3d at 535. This cognate-pleadings approach is the "sole test for determining in the first step whether a party may be entitled to a lesser-included-offense instruction." *Hall*, 225 S.W.3d at 535. An element of a lesser offense may be deduced from those of the greater offense. *Salazar v. State*, 284 S.W.3d 874, 880 (Tex. Crim. App. 2009). However, a trial court is not obligated to instruct the jury on a lesser-included offense if the conduct required to prove the lesser offense is not contained within the conduct alleged in the charging instrument. *Irving v. State*, 176 S.W.3d 842, 846 (Tex. Crim. App. 2005).

Second, after a court concludes that the first prong of the *Royster-Rousseau* test has been satisfied, the defendant is entitled to a lesser-included-offense instruction only if the record supports the instruction. *Rice*, 333 S.W.3d at 144; *Rousseau*, 855 S.W.2d at 672-73. That is, the trial court must charge the jury on an applicable lesser-included offense only "if there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Id.* A defendant is not entitled to an instruction on a lesser offense if the evidence merely raises the possibility of the lesser offense; rather, the evidence "must establish the lesser-included offense as a valid, rational alternative to the charged offense." *Goad*, 354 S.W.3d at 446; *Hall*, 225 S.W.3d at 536.

10

It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997). Instead, there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before the instruction is warranted. *Skinner*, 956 S.W.2d at 543. A lesser-included offense may be raised if evidence either affirmatively refutes or negates an element establishing the greater offense, or if the evidence on the issue is subject to two different interpretations, and one of the interpretations negates or rebuts an element of the greater offense. *Schweinle v. State*, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996). Thus, whether a defendant has fulfilled the second portion of the *Royster-Rousseau* test and, as such, is entitled to a jury instruction on a lesser-included offense must be determined on a case-by-case basis accordingly to the specific facts and evidence of the defendant's case. *Jacob v. State*, 892 S.W.2d 905, 907 (Tex. Crim. App. 1995).

Conversely, when the State requests a lesser-included-offense instruction, the State must satisfy only the first prong of the *Royster-Rousseau* test to be entitled to the instruction; that is, the State must show only that its requested instruction describes an offense that is actually a lesser-included-offense of the charged offense. *See Grey v. State*, 298 S.W.3d 644, 645- (Tex. Crim. App. 2009) (overruling precedent to hold that the State is not bound by the second prong of the *Royster-Rousseau* test); *Satchell v. State*, 321 S.W.3d 127, 136 (Tex. App.—

11

Houston [1st Dist.] 2010, pet. ref'd) (relying on *Grey* to reject the defendant's complaint that the trial court erred by granting the State's request for a lesser-included-offense instruction, observing that "to obtain a lesser-included offense instruction, the State need only show that its requested instruction describes a lesser-included offense of the charged offense."). As the Texas Court of Criminal Appeals explained in *Grey*, permitting the State its requested lesser-included-offense instructions without requiring the prosecution to meet the demands of the second prong of the *Royster-Rousseau* test empowers the State to "see that justice is done" by providing the factfinder with options to convict the defendant of a lesser offense, but without capitulating that the defendant is not guilty of the charged offense. *Grey*, 298 S.W.3d at 651. Further, granting the State such flexibility best serves society's interest in convicting and punishing people who are guilty of crimes, given that "submission of the lesser-included offense will enhance the prospects of securing an appropriate criminal conviction for a defendant who is in fact guilty...." *Id.*

### III. The Trial Court Did Not Err by Granting the State's Request for a Jury Instruction on the Lesser-Included Offense of Robbery by Threat

The record establishes that the State requested a jury instruction on the lesser offense of robbery by threat, and that the trial court agreed to include such an instruction in the jury charge over appellant's objection. (CR – 70); *see* (RR IV – 96-98) (showing the prosecutor's request, "Your Honor, we are requesting the

12

lesser."). Under *Grey*, the State was entitled to an instruction on that lesser offense if it established the first prong of the *Royster-Rousseau* test, only; that is, if the State was requesting an instruction for a lesser offense that was legally a lesser-included offense of the charged offense. *See Grey*, 298 S.W.3d at 645-51 (concluding that, to avoid "plac[ing] undue burdens on the prosecutor" and to permit the prosecution to submit lesser offenses when the prosecutor believes such options such be available to the jury, the State is not bound by the second prong of the *Royster-Rousseau* test); *Satchell*, 321 S.W.3d at 136 ("[T]o obtain a lesser-included offense instruction, the State need only show that its requested instruction describes a lesser-included offense of the charged offense.")

For purposes of the first prong of the *Royster-Rousseau* test, it is clear that robbery by threat is a lesser-included offense of aggravated robbery by threat with a deadly weapon because all of the elements of robbery by threat are contained within the elements of aggravated robbery by threat with a deadly weapon. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (stating that one offense is a lesser-included offense of another crime if the lesser offense "is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]"; *compare* TEX. PENAL CODE ANN. § 29.02(a)(2) *with* TEX. PENAL CODE ANN. § 29.03(a)(2); *see also, e.g., Young v. State*, 428 S.W.3d 172, 176 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *Penaloza v. State*, 349

13

S.W.3d 709, 711 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).  Accordingly, consistent with *Grey*, the State was entitled to its requested lesser-included-offense instruction on robbery by threat on that basis, alone, regardless of whether there was any affirmative evidence in the record that refuted or negated the deadly weapon element of the charged offense and, hence, established robbery by threat as a rational and viable alternative to aggravated robbery by threat with a deadly weapon, as charged.  *C.f. Grey*, 298 S.W.3d at 646-51 (holding that the State was entitled to submission of a jury instruction on the lesser offense of simple assault, over the defendant's objection, because that offense was a lesser-included offense of the charged offense of aggravated assault by causing bodily injury with a deadly weapon under the first prong of the *Royster-Rousseau* test); *Satchell*, 321 S.W.3d at 136 (affirming the trial court's submission of the State's requested jury instruction on possession of PCP, over the defendant's objection, because that offense was a lesser-included offense of possession with intent to deliver PCP).  Thus, the trial court did not err in granting the State's request for an instruction on the lesser-included offense of robbery by threat, and appellant's arguments to the contrary lack merit.

Appellant's sole point of error should be overruled.

———————◆———————

## CONCLUSION AND PRAYER

For the foregoing reasons, the State respectfully submits that the trial court correctly instructed the jury on the lesser-included offense of robbery. Thus, the State respectfully prays that this Court will overrule appellant's single point of error, and will affirm appellant's conviction.

Respectfully submitted,

DEVON ANDERSON
District Attorney
Harris County, Texas


   /S/ Melissa Hervey
MELISSA P. HERVEY
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net

15

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i), the undersigned attorney certifies that there are 3,270 words in the foregoing computer-generated document, based upon the representation provided by Microsoft Word, the word processing program that was used to create the document, and excluding the portions of the document exempted by Rule 9.4(i)(1).

   /s/ Melissa Hervey
**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net

# CERTIFICATE OF SERVICE

This is to certify that the undersigned counsel has directed the e-filing system eFile.TXCourts.gov to serve a true and correct copy of the foregoing document upon Cynthia Henley, appellant's attorney of record on appeal, on January 13, 2015, at the following e-mail address, through the electronic service system provided by eFile.TXCourts.gov:

cynthiahenley@yahoo.com

/s/ Melissa Hervey

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net

17