

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00328-CR

_____

DWAYNE MATTHEW BRACKENS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 5
Tarrant County, Texas
Trial Court No. 1465765

---

Before Sudderth, C.J.; Kerr and Pittman, JJ.
Memorandum Opinion by Justice Pittman

## MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Dwayne Matthew Brackens appeals his conviction for assault causing bodily injury to a family member. In two issues, Brackens argues that the evidence is insufficient to support the jury's verdict that he acted recklessly and that the trial court erred by including the lesser-included offense that he acted recklessly in its charge to the jury. Because we hold that the evidence is sufficient to support the jury verdict and that the trial court did not err by submitting the State's requested lesser-included offense instruction, we affirm.

## II. BACKGROUND

By information, the State charged Brackens with intentionally or knowingly causing bodily injury to Lalandra Hill, a person with whom Brackens had a dating relationship, by hitting her with his hand.

At trial, Officer John Winter of the Arlington Police Department testified that he responded to a domestic-disturbance dispatch on July 31, 2016. When Officer Winter arrived at the location, Brackens's residence, Winter observed two individuals standing on the corner, waving at him. Hill, one of the persons standing on the corner, declared to Winter, "It's us. It's us." Winter described Hill as appearing afraid and scared. Hill told Winter that she was attempting to "get away." According to Officer Winter, Hill also had an "obvious injury to her face." Specifically, Winter

"noticed a huge knot on [Hill's] left cheek below her eye and above her mouth." Winter also observed that Hill's left eye and the top of her lip were swollen.

Officer Winter then spoke with Brackens. By Winter's account, Brackens told him that he and Hill had been at a club that night, and while they were driving home, the two got into an altercation. Brackens told Winter that Hill had assaulted him. Officer Winter said that he observed scratches and red marks on Bracken's lower lip, the right-hand side of his face, and his left ear. Winter further averred that Brackens told him that Hill's injuries were due to her falling while attempting to go into his house. Brackens also told Officer Winter that Hill was extremely intoxicated, was possibly under the influence of marijuana or cocaine, and was acting dramatically in an effort to get child support from him.

After speaking with Brackens, Officer Winter spoke again with Hill. Winter said that what stood out most to him as he spoke with Hill was that she appeared to be in a great deal of pain. Winter averred that Hill appeared to have recently been in a "serious altercation" and that she seemed relieved that he had arrived and was glad to be separated from Brackens. Hill told Officer Winter that she and Brackens were returning to his house from a club they had visited that night when they began arguing. Hill further told Winter that once they arrived and as she headed toward the house, Brackens called her derogatory names and then hit her in the back of the head. According to Hill, she responded by turning around and hitting Brackens. Allegedly,

3

Brackens then retaliated by hitting Hill in the face, and she fell to the ground as a result.

The State introduced pictures of Hill's face taken in the back of an ambulance prior to her being transported from Brackens's home. According to Officer Winter, based on his training and experience, Hill's facial injuries were inconsistent with her having fallen down and looked instead as if she had been punched in the face. Winter arrested Brackens, transported him to the police station, and took pictures of Brackens's injuries, which Winter described as minor. The State also introduced and published the pictures of Brackens's injuries for the jury. Officer Winter averred that based on his observations, Brackens had assaulted Hill. Winter further said that he found Hill's story of what had transpired to be credible but that Brackens's version of the events was not.

While at the scene, Officer Winter also spoke with Melton Tippen, Brackens's roommate. Winter said that his conversation with Tippen was brief and that he believed that Tippen had little to offer toward the investigation of what had occurred that night. Winter said that at no time did Brackens, Hill, or Tippen ever suggest that Hill's injuries were because she had fallen against a vehicle.

At trial, Hill testified that she and Brackens had dated off and on for years and that they had a son together. According to Hill, at the time of the July 31, 2016 events, she was married to someone else, but she and Brackens were "having an affair." Hill then stated that she picked up Brackens and Tippen at Brackens's house

4

late the prior evening so that the three could go to a dance club. Hill averred that the three had stayed at the club until 2:00 a.m. when the club closed and that the three had drunk heavily while at the club. Hill testified that she was too intoxicated to drive and that she asked Brackens to drive them home. By Hill's account, she did not recall the drive back to Brackens's home because she suffered memory loss after sustaining a concussion from Brackens's hitting her later that morning. Hill said that the first thing she remembered after arriving at Brackens's home was him hitting her on the left side of her face and him leaning over her "saying these most horrible things." Hill stated that Brackens spoke to her like she "was trash," but she did not recall being struck from behind. Hill further testified that she remembered hitting Brackens after he had struck her.

Hill said that when Officer Winter arrived, she was initially reluctant to cooperate with his investigation because she did not want to be placed in the ambulance and she did not want Brackens to get in trouble "[b]ecause he's the father of [their] son." Hill said that she sustained a black eye and hematoma of the eye because of Brackens's having struck her in the face. The State introduced photographs depicting Hill's injuries a few weeks after she sustained them. According to Hill, the pictures were taken by an assistant district attorney a few weeks after the July 31, 2016 events because she sought a protective order against Brackens. Hill said that she eventually chose not to pursue the protective order because she and Brackens shared custody of their son.

5

At trial, Tippen testified for the defense. Tippen averred that he, Brackens, and Hill had gone out the night of July 30, 2016, to celebrate Tippen's birthday. Tippen said that once the club began to close, he and Brackens went downstairs and waited for Hill. As they waited, Brackens received a phone call, which he answered. As Brackens was talking on the phone, Hill approached him and said something to him, but Tippen could not make out what she had said. By Tippen's account, Hill's demeanor changed dramatically from "very happy" to not being "very happy at all." Eventually, the three got into Hill's vehicle with Brackens in the driver's seat, Hill in the passenger seat, and Tippen in the seat behind Brackens. According to Tippen, as Brackens drove them to his house, Hill began arguing "about some girl" and started punching Brackens in the face and pushing on the side of his head as he drove down the highway; Brackens said nothing while this transpired. Tippen testified that Brackens had to pull to the side of the road in order to calm down Hill so that she would stop interfering with his ability to drive safely. Tippen further said that at no time while Brackens was driving did Brackens strike Hill.

When they eventually arrived at Brackens's house, Tippen said that Brackens exited the driver's side and went immediately toward his house but that Hill fell out of the vehicle; Tippen believed she had struck the door because he "heard a thump." Tippen averred that he went to check on her and that she was on her hands and knees; he tried to help her up, but "she fell back down again immediately." Tippen said that Hill fell again a third time as he tried to walk her toward the house. Tippen

stated that it was after this third fall that he noticed Hill's cheek began to swell. Tippen offered to take Hill in the house and get some ice for her cheek, but Hill refused. Tippen then went and got ice from the house and brought it out to her, but she also refused to apply the ice to her face.

By Tippen's account, Brackens was never near enough to Hill to strike her, and he did not see Brackens strike her. Tippen said that he eventually tired of trying to help Hill, and because he had been drinking himself, he decided to go in the house and sit down. Tippen then fell asleep on the couch but woke up when the police arrived. Tippen said that it was probably an hour between when he fell asleep and when the police arrived. Eventually, Tippen spoke with Officer Winter, but he did not tell Winter about Hill's having fallen three times. And he did not mention to Officer Winter that Hill's face had begun to swell before he went into the house.

As the trial court prepared its charge to the jury regarding guilt-innocence, the State, over Brackens's objection, requested that the lesser-included offense of reckless assault causing bodily injury to a family member be included in the instructions. The trial court agreed, and the instruction—along with an instruction regarding intentional or knowing assault causing bodily injury to a family member—was submitted to the jury. After deliberation, the jury found Brackens guilty of the lesser-included offense of reckless assault, and the trial court rendered judgment accordingly. After a punishment hearing, the trial court sentenced Brackens to 120 days in jail. This appeal followed.

7

## III. DISCUSSION

### A.     Sufficiency of the Evidence

In his first issue, Brackens argues that the evidence is insufficient to support the jury's verdict that he recklessly committed assault against Hill. Specifically, Brackens argues that the evidence in this case could have shown only that he intentionally hit Hill or that he did not hit her at all; thus, he could not have recklessly committed an assault against Hill. We disagree.

### 1.     Standard of Review and the Law of Assault

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based

upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33. A jury may accept or reject all or any part of a witness's testimony. *Franklin v. State*, 193 S.W.3d 616, 620 (Tex. App.—Fort Worth 2006, no pet.).

A person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1). "Bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). Bodily-injury assault is a result-of-conduct offense. *See Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008). Thus, in an assault case, the defendant's mental state relates to the result of the defendant's conduct—bodily injury. *See* Tex. Penal Code Ann. § 22.01(a)(1); *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003). A person is reckless with respect to the result of conduct when he consciously disregards a substantial and unjustifiable risk that "the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." Tex. Penal Code Ann. § 6.03(c). A factfinder may infer a defendant's mental state through the defendant's acts, words, and conduct. *Reyes v. State*, 480 S.W.3d 70, 77 (Tex. App.—Fort Worth 2015, pet. ref'd).

## 2. The Evidence is Sufficient to Support "Reckless" Assault.

Brackens candidly admits that the evidence could have shown that he intentionally hit Hill "in her head and face . . . causing the substantial injury described by" Winter. But Brackens argues that if the evidence "only showed that he either viciously hit Hill, or did not hit her at all, then there is no evidence to support a finding of recklessness." Viewing the evidence in the light most favorable to the verdict, however, the evidence showed that, as charged in the information, Brackens hit Hill with his hand.

From this evidence, we conclude that the jury could have rationally found that Brackens was aware of a substantial and unjustifiable risk of bodily injury to Hill when he hit her with his hand, that he consciously disregarded the risk, that he grossly deviated from the standard of care that an ordinary person would exercise, and that he caused bodily injury. *See* Tex. Penal Code Ann. §§ 6.03(c); 22.01(a)(1); *see also Wingfield v. State*, 282 S.W.3d 102, 105 (Tex. App.—Fort Worth 2009, pet. ref'd) (recognizing that "people of common intelligence understand pain and some of the natural causes of it"). Although the State sought to prove an intentional or knowing assault based on these facts, the law did not prevent the jury from considering the same evidence to convict Brackens for assault committed through a reckless state of mind. *See Stepherson v. State*, 523 S.W.3d 759, 764 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Appellant . . . insists that the State sought only to prove that appellant acted intentionally and knowingly . . . and not recklessly . . . . Even if true, a jury is not

10

prevented from looking at the same evidence and concluding that it supports a finding of reckless, and not intentional, conduct."); *see also* Tex. Penal Code Ann. § 6.02(e) ("Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged."); *Flores v. State*, 245 S.W.3d 432, 440 (Tex. Crim. App. 2008) (stating that "proof of intent would, as a matter of law, establish recklessness as well"); *Bell v. State*, 693 S.W.2d 434, 438 (Tex. Crim. App. 1985) (stating that when the State establishes the "higher culpable mental state of intent or knowledge, it necessarily establishe[s] the lower culpable mental state of recklessness"); *Cobb v. State*, No. 10-16-00406-CR, 2017 WL 2819106, at *3 (Tex. App.—Waco June 28, 2017, pet. ref'd) (mem. op., not designated for publication) (holding that a factfinder could rationally find that a defendant recklessly caused the victim's death when the defendant shot the victim eight times at close range).

This Court has recently addressed the very issue of whether conduct that could be deemed intentional can also support a jury's verdict that the conduct constituted recklessness even though the State did not charge the defendant with a reckless intent. *See Byers v. State*, No. 02-17-00282-CR, 2018 WL 3580886, at *3 (Tex. App.—Fort Worth July 26, 2018, no pet.) (mem. op, not designated for publication). In *Byers*, the State charged Byers with intentionally and knowingly grabbing his girlfriend's throat and squeezing to the point of causing red marks or repeatedly slamming her head on the floor. *Id.* Even though the State had charged an intentional and knowing act, the jury found that Byers had acted recklessly when he squeezed his girlfriend's neck or

11

repeatedly slammed her head on the floor. *Id.* On appeal, Byers argued that his conduct could only have been intentional or that it did not occur at all. *Id.* This Court reasoned that the jury could have rationally found that Byers was aware of a substantial and unjustifiable risk of bodily injury to his girlfriend, that he consciously disregarded the risk when he either grabbed and squeezed her throat or repeatedly struck her head on the floor, that he grossly deviated from the standard of care that an ordinary person would exercise, and that he caused bodily injury. *Id.* This Court held that the evidence was sufficient to support the jury's verdict that Byers had recklessly committed assault. *Id.*

As in *Byers*, where the State charged Byers with the intentional or knowing act of grabbing his girlfriend's throat or slamming her head repeatedly on the ground, here, the State charged Brackens with intentionally hitting Hill with his hand. And like in *Byers*, where this Court held that conduct that could have supported an intentional or knowing act but that the jury was free to find that he had acted recklessly, here, even though the State charged Brackens with intentionally or knowingly hitting Hill with his hand, the jury was free to find that this same conduct constituted a reckless act. *See id.* Thus, as we did in *Byers*, this Court concludes that the evidence in this case supports that jury's verdict that Brackens recklessly hit Hill with his hand, causing bodily injury. *See id.* ("Although the State sought to prove an intentional or knowing assault based on these facts, the law did not prevent the jury

12

from considering the same evidence to convict Byers for assault committed through a reckless state of mind."). We overrule Brackens's first issue.

## B. The Trial Court Did Not Err by Including the Lesser-Included Instruction in the Jury Charge.

In his second issue, Brackens argues that the trial court reversibly erred by including an instruction in the jury charge on the lesser-included offense of reckless assault causing bodily injury. Relying on the same argument that he made in his first issue—that the evidence established only an intentional act or no act at all—Brackens contends that there was no evidence to support the inclusion of the lesser-included offense instruction. We disagree.

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.*

Brackens's issue focuses on the second prong of the *Royster-Rousseau* test, *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981) (op. on reh'g), but because the State requested the lesser-included offense instruction, it needed only to satisfy the first prong of that test to obtain the instruction. *Grey v. State*, 298 S.W.3d 644, 651 (Tex. Crim. App. 2009) (holding that the State does not have to satisfy the "guilty only" prong of the *Royster-Rousseau* test to be entitled to a lesser-included offense

instruction); *Satchell v. State*, 321 S.W.3d 127, 136 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). The State had no obligation to show that the record contains some evidence that would permit the jury to convict Brackens only of the lesser offense. *See Grey*, 298 S.W.3d at 645; *Satchell*, 321 S.W.3d at 136.

Thus, our only question is whether the elements of reckless assault bodily injury are included within the proof necessary to establish intentional or knowing bodily assault. *See State v. Meru*, 414 S.W.3d 159, 161 (Tex. Crim. App. 2013); *Hall v. State*, 225 S.W.3d 524, 528, 535–36 (Tex. Crim. App. 2007). The requested lesser offense must meet the requirements of at least one of the four types of lesser offenses described in article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09; *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). An offense is a lesser-included offense under article 37.09(3) of the code of criminal procedure if "it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." Tex. Code Crim. Proc. Ann. art. 37.09(3).

In a juvenile case, we have already held that reckless assault causing bodily injury is a lesser-included offense of intentional or knowing assault causing bodily injury because it differs from intentional or knowing assault causing bodily injury only in the less culpable mental state. *In re R.H.*, No. 02–05–00340–CV, 2006 WL 1653171, at *1 (Tex. App.—Fort Worth June 15, 2006, no pet.) (mem. op.); *see Hicks v, State*, 372 S.W.3d 649, 658 (Tex. Crim. App. 2012) (holding separate instruction of aggravated assault by recklessly causing bodily injury was proper when

14

defendant was charged with aggravated assault by intentionally or knowingly using a deadly weapon). We see no reason to deviate from our holding here. Accordingly, we hold that the trial court properly included the challenged instruction in the jury charge.

We overrule Brackens's second issue.

## IV. CONCLUSION

Having overruled both of Brackens's issues on appeal, we affirm the trial court's judgment.

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 14, 2019